Case: 1:21-mj-00221
Assigned to: Judge Faruqui, Zia M
Assign Date: 2/10/2021
Description: COMPLAINT W/ARREST WARRANT

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Isaac McPheeters, a Special Agent with the Federal Bureau of Investigation assigned to the Kansas City Field Office, being duly sworn, depose and state as follows:

## AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed by the FBI for approximately four years.   I am an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code. In addition to my regular duties, I am currently also tasked with investigating criminal activity that occurred in and around the Capitol grounds on January 6, 2021.

## PURPOSE OF AFFIDAVIT

2.      This affidavit is being submitted for the limited purpose of establishing probable cause to believe that STEPHEN BRIAN QUICK (hereinafter referred to as "STEPHEN QUICK") has violated Title 18 U.S.C. §§ 1752(a)(1) and (2), Restricted Buildings or Grounds; and Title 40 U.S.C. §§ 5104(e)(2)(D) and (G), Unlawful Activities on Capitol Grounds; Disorderly Conduct; Parading and Demonstrating in the Capitol Building, as set forth below::

      a. Title 18 U.S.C. §§ 1752(a)(1) and (2): Restricted Building or Grounds; (1) knowingly entering or remaining in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engaging in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the

orderly conduct of Government business or official functions; or attempts or conspires to do so;

b.  Title 40 U.S.C. §§ 5104(e)(2)(D) and (G): Unlawful Activities on Capitol Grounds; Willfully and knowingly (D) engaging in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parading, demonstrating, or picketing in any of the Capitol Buildings.

3.     The statements contained in this affidavit are based in part on: information provided by FBI Special Agents, Task Force Officers, and FBI Analysts, written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents, information gathered from the results of physical surveillance conducted by law enforcement agents, reporting by eye witnesses, independent investigation and analysis by FBI Agents/Analysts and computer forensic professionals, and my experience, training and background as an FBI Agent.  Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested complaint.

## JURISDICTION

4.     This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, the U.S. Attorney's Office for the District of Columbia is investigating this case, which, among other things, involves possible violations of Title 18 U.S.C. §§ 1752(a)(1) and (2): Restricted Building or Grounds and Title 40 U.S.C. §§ 5104(e)(2)(D) and (G), Unlawful Activities on Capitol Grounds and Disorderly Conduct. The conduct at issue includes an overt act in the District of Columbia, in the form of entering a restricted area around the Capitol on January 6, 2021, as part of a mob that disrupted the proceedings of Congress, engaged in property damage and theft, and caused physical injury.

## BASIS FOR PROBABLE CAUSE

5.      The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

6.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

7.      As the proceedings continued in both the House and the Senate, and with Vice President  Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

8.      At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

9.      Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

10.     During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

11.     On January 21, 2021, STEPHEN QUICK made statements to the FBI in a voluntary, non-custodial interview. STEPHEN QUICK admitted to going inside the U.S. Capitol

during the riot that took place on January 6, 2021. Images 1 and 2 show STEPHEN QUICK entering the Capitol building through a window.

Image- 1



Image- 2



12.     STEPHEN QUICK recounted that he went to Washington D.C. to attend the "Stop The Steal" rally that was to take place there on January 6, 2021. STEPHEN QUICK stated that as the crowd moved closer to the Capitol, a change came over the crowd, and STEPHEN QUICK went inside the Capitol building along with others in his group. STEPHEN QUICK relayed that he was "ashamed" of what he had done by going inside. STEPHEN QUICK estimated he was inside the Capitol for about ten minutes.

13.     STEPHEN QUICK consented to a search of an SD card for a camera he claimed to have brought inside the Capitol. STEPHEN QUICK claimed to have taken the photos and videos contained on the SD card. A review of the photos in question showed multiple photos taken outside the Capitol (see Images 3, 4, and 5 for a sample), to include photos that appeared to have been taken from just outside one of the windows of the Capitol building.

Image-3



Image-4



Image-5



STEPHEN QUICK's SD card also included video that appeared to be taken inside the

Capitol. See Images 6 and 7 for screen shots taken from the videos on STEPHEN

QUICK's SD card.

Image-6



Image-7



14.    STEPHEN QUICK's brother, Michael Aaron Quick (hereinafter "MQ"), was interviewed by the FBI on January 21, 2021. MQ stated that he traveled with STEPHEN QUICK to the Stop The Steal protest and went inside the Capitol with STEPHEN QUICK on January 6, 2021. MQ provided a photo of STEPHEN QUICK taken on January 6, 2021 (see Image 8 below). I recognize STEPHEN QUICK in Image 8 from having interviewed STEPHEN QUICK.

Image-8



15.     The FBI investigation obtained security footage taken from inside the Capitol
near the door for Senate Wing area S139on January 6, 2021. Footage from about 2:56 PM shows
STEPHEN QUICK inside the capitol during the protest. The entrance directly behind STEPHEN
QUICK is later seen in the footage to be an open window. See Images 9 and 10 below with the
red arrows identifying STEPHEN QUICK.

Image-9



Image-10, close up of Stephen Quick inside Capitol.



## <u>CONCLUSION</u>

16.     Based on the above factual allegations, I submit that probable cause exists to believe that STEPHEN BRIAN QUICK, has violated Title 18 U.S.C. §§ 1752(a)(1) and (2), Restricted Buildings or Grounds and Title 40 U.S.C. §§ 5104(e)(2)(D) and (G), Unlawful Activities on Capitol Grounds; Disorderly Conduct; Parading and Demonstrating in the Capitol Building.


Respectfully submitted,

_____
ISAAC MCPHEETERS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION


Sworn to via telephone after submission by reliable electronic means, Fed. R. Crim. P. 3, 4(d), and 4.1, on this 10th day of February 2021.


_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE